UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MOHAMMED A.,[1]

Plaintiff,

DECISION AND ORDER

-vs-

24-CV-0628-MAV

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

## INTRODUCTION

In July 2024, Mohammed A. ("Plaintiff") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c), seeking judicial review of the Commissioner of the United States Social Security Administration's ("Commissioner") denial of his application for Supplemental Security Income ("SSI"). ECF No. 1. Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF No. 8 (Plaintiff); ECF No. 14 (Commissioner). For the reasons set forth below, Plaintiff's motion for judgment on the pleadings [ECF No. 8] is denied. The Commissioner's motion [ECF No. 14] is granted.

## PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court. Of particular

[1] The Court's Standing Order issued on November 18, 2020, directs that, "in opinions filed pursuant to . . . 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

note, although Plaintiff originally filed his application for SSI benefits in 2014 and has endured multiple remands to the Administrative Law Judge ("ALJ") for additional proceedings, the motions presently before the Court are directed only to proceedings and decisions following the Appeals Council's remand to the ALJ in September 2022. *See, e.g.,* Administrative Record ("AR"), 15–29 (2017 ALJ Decision), 576–98 (2020 ALJ Decision),[2] ECF No. 3.

**I. The Appeals Council's 2022 Order**

On September 10, 2022, the Commissioner's Appeals Council issued an order remanding Plaintiff's case to the ALJ. AR at 606–08. The order provides helpful context to the subsequent proceedings before the ALJ and the issues presently before the Court:

> Under the authority of 20 CFR 416.1484, the Appeals Council assumes jurisdiction of this case and again remands the case to an Administrative Law Judge for resolution of the following issue:
>
> - The hearing decision indicates that the claimant has the residual functional capacity for work-related functions that equate to a maximum sustained capability for a range of medium work, but the decision does not contain sufficient rationale with specific references to evidence of record in support of the assessed limitations. Specifically, the Administrative Law Judge found the claimant's Crohn's disease was a severe impairment . . . . However, the residual functional capacity is absent limitations for this impairment, and the decision is absent sufficient rationale regarding this omission.
>
>   Upon review of the record, the claimant was diagnosed with Crohn's disease in 2009 and underwent partial small bowel section and anastomosis . . . . The claimant received bilateral inguinal hernia repair with mesh and excision of the right cord lipoma . . . . The claimant was treated with an immune agent . . . . and Imodium for diarrhea . . . . Small bowel studies in July 2014 showed some evidence of active Crohn's disease at the ileocolic anastomosis . . . . In March

[2] The page references from the transcripts are to the bates numbers inserted by the Commissioner, not the pagination assigned by the Court's CM/ECF electronic filing system.

> 2018, the claimant reported gas and melena . . . . An abdominal MRI showed some evidence of colitis in July 2018 . . . . While the claimant reported normal bowel movements in 2019 . . ., a colonoscopy showed some erosion, congestion and redness . . . . In reports completed for the agency, the claimant indicated multiple bowel movements per day . . . . Also, there is an opinion in the record from the Sarah Hai, PA-C, who opined the claimant's periodic flares of symptoms from Crohn's disease would limit the claimant's ability to work, due to the frequency of bowel movements, severity of pain, and potential for hospitalization . . . . Notably, the Administrative Law Judge granted great weight to medical expert, Lee Fischer, M.D., whose assessment was adopted in the residual functional capacity . . . . However, Dr. Fischer was a family medicine specialist, rather than a gastroenterologist. Therefore, further evaluation of the claimant's Crohn's disease and related limitations is required on remand with the assistance of a gastroenterologist medical expert.

AR at 606–07 (internal citations to the record omitted).

## II. Plaintiff's Hearing Before the ALJ

After the Appeals Council's order, Plaintiff appeared by telephone on November 30, 2023 for a hearing before an ALJ. AR at 475–515. The ALJ heard testimony from non-examining medical expert Shibban Ganju, M.D., who has been certified by the American Board of Gastroenterology; from Plaintiff; and from vocational expert Jay Steinbrenner (the "VE").

Dr. Ganju testified that he had reviewed Plaintiff's medical records, and had noted "mentions of Crohn's disease throughout the record from 2014 to 2022." AR at 482. Nevertheless, he stated that the medical evidence did not show that Plaintiff's impairments met or medically equaled any of the impairments described in the listing of impairments, including Listing 5.06 (inflammatory bowel disease) or 5.07 (short bowel syndrome). Further, when the ALJ asked whether Plaintiff would have any functional limitations or restrictions resulting from his impairments, Dr. Ganju

replied that he "did not see any objective evidence [of limitation from the impairments] that [he] can speak of." AR at 483. Upon examination by Plaintiff's counsel, Dr. Ganju agreed that Plaintiff's providers had opined that he would miss work two to three days a month, but when asked about the "medical basis" for these opinions, Dr. Ganju replied, "[i]f you are asking me . . . there is no medical evidence. It is just by the symptoms." AR at 489–90.

After Dr. Ganju concluded, the ALJ took Plaintiff's testimony. At the outset, the ALJ asked Plaintiff why he was unable to work, and Plaintiff responded that there was "more than one problem," and cited "the bathroom issue" causing him to always have to go to the bathroom, the constant pain, and his depression. AR at 499. Plaintiff reported that he had to go to the bathroom four to 10 times a day, for 10 or 15 minutes at a time, that his medication has not been as effective as when he first started taking it, that he typically has to go to the bathroom between 9 a.m. and 5 p.m., and that both heat and cold increase the amount of times that he has to go to the bathroom. AR at 501–02.

Lastly, the ALJ took the VE's testimony. The ALJ asked the VE whether there were jobs in the economy that a hypothetical claimant with an RFC identical to that which the ALJ ultimately found Plaintiff to have could perform. AR at 507–08. The VE identified several jobs, including a cleaner / housekeeper, injection molder, and electronic sub assembler. AR at 508–12. When asked about how a hypothetical claimant's need for unscheduled bathroom breaks would affect the number of jobs available, the VE stated that employers would be looking at whether the claimant would be off task for more than 15% of the day, and that if the bathroom breaks

constituted "greater than nine minutes each and every hour, that would degrade [the claimant's] productivity to unacceptable levels." AR at 509.

**III. The ALJ's Decision**

On March 6, 2024, the ALJ issued a decision finding that Plaintiff was not disabled, and therefore did not qualify for SSI. AR at 30.

While a claimant for Disability Insurance Benefits is eligible for payment from the onset date of his or her disability, an SSI claimant will only receive payments beginning the month after his or her application date. *See* 20 C.F.R. § 416.501. Thus, at step one of the Commissioner's "five-step, sequential evaluation process,"[3] the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date of October 30, 2014. AR at 461.

At step two, the ALJ determined that Plaintiff had the severe impairments of Crohn's disease and hernia. *Id.*

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the

[3] The Social Security Administration has outlined a "five-step, sequential evaluation process" that an ALJ must follow to determine whether a claimant has a "disability" under the law:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); citing, *inter alia*, 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)). The claimant bears the burden of proof for the first four steps of the process. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1 ("the Listings"). AR at 36. In making this assessment, the ALJ considered whether Plaintiff's colitis or Crohn's disease met the requirements for the gastrointestinal impairments in Listings 5.06 and 5.08. AR at 463.

Then, before proceeding to step four, the ALJ carefully considered the entire record and determined that Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. § 416.967(c):

> [T]he claimant could lift/carry fifty pounds occasionally and twenty-five pounds frequently. He could sit, stand and walk six hours in an eight-hour workday. He could occasionally climb ramps and stairs, kneel, crouch, and stoop but never climb ropes, scaffolds and ladders or crawl; he is limited to work that does not require work on a production line; he is limited to work that does not require driving a vehicle. He is limited to simple routine tasks that can be learned after a short demonstration or within 30 days; he can only work in a location where he would have ready access to a bathroom; he must be allowed to take up to two unscheduled fifteen minute breaks per day; he is limited to work in which communication in English is not required as a function of the job.

AR at 463–64.

At step four, the ALJ found that Plaintiff had no past relevant work. AR at 467. Nevertheless, based on Plaintiff's age, education, work experience, and RFC, as well as the testimony of the VE, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, namely a housekeeper, injection molder, stock checker, and hand packer. AR at 467–68. Therefore, the ALJ found that Plaintiff was not disabled, and not entitled to SSI payments. AR at 30.

Because his case had already been remanded by a Federal court for further consideration, and because the Appeals Council did not thereafter assume

jurisdiction over the case, the ALJ's decision became the "final decision" of the Commissioner. *See* 20 C.F.R. § 416.1484(a) ("[W]hen a case is remanded by a Federal court for further consideration and the Appeals Council remands the case to an [ALJ] . . . the decision of the [ALJ] will become the final decision of the Commissioner after remand on your case unless the Appeals Council assumes jurisdiction of the case.").

## LEGAL STANDARD

Under 42 U.S.C. § 1382c(a)(3)(A), a claimant is disabled and entitled to SSI if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." *See also* 42 U.S.C. § 423(d) (setting forth the same definition of "disabled" for DIB eligibility).

Where an individual's application for SSI has been denied, 42 U.S.C. § 405(g) defines the process and scope of judicial review of the Commissioner's final decision. *See also* 42 U.S.C. § 1383(c)(3) (authorizing judicial review of SSI determinations as provided in § 405(g)). The fourth sentence of § 405(g) authorizes the reviewing court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." The sixth sentence authorizes the reviewing court to "order additional evidence to be taken before the Commissioner . . . upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) (discussing § 405(g)).

"The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted). Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, the reviewing court must first determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the correct legal standards are applied, the district court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

"Whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (noting that the phrase "substantial evidence" is a term of art used in reviewing administrative agency decisions to signify evidence that amounts to "more than a mere scintilla"). Thus, once an ALJ finds facts, a reviewing court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448. Yet, although "the evidentiary threshold for the substantial evidence standard is not high, . . . [it] is also not merely hortatory: [i]t requires relevant evidence which would lead a reasonable mind to concur in the ALJ's factual determinations." *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022) (internal quotation marks omitted).

## DISCUSSION

In his motion for judgment on the pleadings, Plaintiff argues that the ALJ committed "outcome determinative error" when "he actually ignored the bulk of Dr. Ganju's testimony . . . . because Dr. Ganju's testimony contradicts the RFC in terms of Plaintiff's need for unscheduled and frequent bathroom breaks." ECF No. 8-1 at 13. Plaintiff also argues that the ALJ's finding that Plaintiff's Crohn's disease could be accommodated by two unscheduled bathroom breaks per day was not supported by substantial evidence. ECF No. 8-1 at 17. The Commissioner maintains that the ALJ did not commit legal error, and that the RFC determination was based on substantial evidence. ECF No. 14-1.

After a thorough review of the record, the Court agrees with the Commissioner that the ALJ applied the proper legal standards, and made an RFC finding that was supported by substantial evidence.

### I. The ALJ's Treatment of Dr. Ganju's Testimony

As indicated above, non-examining medical expert Dr. Ganju, a board-certified gastroenterologist, testified at Plaintiff's hearing before the ALJ in 2023. *See supra* p. 3–4. In his RFC decision, the ALJ summarized Dr. Ganju's testimony as follows:

> . . . [M]edical expert, Dr. Shibban Ganju, testified the claimant's impairments do not meet the Listing 5.06 requirements. Moreover, he stated there is no objective evidence of any functional limitations. This opinion is persuasive. Dr. Ganju is a board-certified physician in the field of gastroenterology who had an opportunity to review the entire record. He supported his opinion with detailed reference to the record and even though his opinion does not specify the precise extent of the limitations, his opinion is consistent with the overall evidence of record.

AR at 465.

In challenging the ALJ's decision, Plaintiff argues that "this is not the whole story." ECF No. 8-1 at 14. He points out that Dr. Ganju also testified that Plaintiff had frequent bowel movements and would need to take a break during those times, and that the opinion that Plaintiff may miss two days per month was "reasonable." *Id.* (citing 483–87). Plaintiff also argues that this error "infected" the ALJ's analysis of the opinions of treating sources Dr. Wacker, who opined that Plaintiff would need three to four bathroom breaks of 10 to 15 minutes each each day and be absent from work three days each month, and Physician's Assistant Sarah Hai, who opined that Plaintiff's Crohn's disease would limit Plaintiff's ability to work due to the frequency of bowel movements. *Id.*

In response, the Commissioner maintains that the ALJ's RFC determination was supported by substantial evidence, that the ALJ's decision did not misrepresent Dr. Ganju's opinion, and that Dr. Ganju's statements regarding Plaintiff's frequency of bowel movements were not themselves medical opinions but rather acknowledgements of other opinions in the record. ECF No. 14-1 at 7–8. The Court agrees with the Commissioner.

**A. Legal Principles**

The Commissioner's regulations define "medical opinion" as "a statement from a medical source about what [the claimant] can still do despite [his] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions in" specific abilities identified as pertinent to adults or children. 20 C.F.R. § 416.913(a)(2). For adults, these abilities include the ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying,

pushing, pulling, or other physical functions; the ability to perform mental demands of work activities; the ability to perform other demands of work, such as seeing, hearing, or using other senses; and the ability to adapt to environmental conditions. 20 C.F.R. § 416.913(a)(2)(i)(A)–(D).

While 20 C.F.R. § 416.945(a)(1) requires the ALJ to assess a claimant's RFC based on *all* of the relevant evidence in the case record, a medical source's remarks about other evidence in the record "are not meaningful statements regarding the impact that [a claimant]'s impairments would have on her ability to perform work-related functions." *Jessica Lynn J. v. Comm'r of Soc. Sec.*, 645 F. Supp. 3d 128, 135 (W.D.N.Y. 2022). Moreover, even if such statements could be considered "medical opinions," an ALJ has the discretion "'to discount a medical opinion due . . . to its vagueness or ambiguity.'" *Id.* (quoting *Alexander v. Comm'r of Soc. Sec.*, No. 19-CV-762-FPG, 2020 WL 5642184, at *5 (W.D.N.Y. Sept. 22, 2020)).

**B. Application**

Plaintiff's argument that the ALJ misrepresented or ignored key elements of Dr. Ganju's testimony, and that this error "infected" the remainder of his RFC analysis is without merit. The passages of Dr. Ganju's testimony upon which Plaintiff relies either do not constitute medical opinion, or do not serve as substantial evidence supporting the additional restrictions Plaintiff suggests.

Here, the ALJ directly asked Dr. Ganju whether Plaintiff had "any functional limitations or restrictions that result from his impairments?" AR at 483. Dr. Ganju responded that he "did not see any objective evidence in the record that I can speak of." *Id.* The ALJ then sought to clarify whether Dr. Ganju believed there were

exertional or postural limitations, and Dr. Ganju confirmed that he did not. *Id.* These statements clearly constituted medical opinion.

The ALJ then permitted Plaintiff's counsel to examine Dr. Ganju. Counsel explained, "my theory of the case here is that [Plaintiff] has got to go to the bathroom a lot and that might impede his ability to sustain work if he is not at his work station doing what he is supposed to do." AR at 486. In that context, counsel reviewed with Dr. Ganju the evidence in the record regarding Plaintiff's reports of the quantity of bathroom breaks that Plaintiff needed each day, and Dr. Ganju stated that "obviously he has got frequent bowel movements as mentioned in the record off and on. During those times he has to take a break." AR at 485. Similarly, counsel asked Dr. Ganju about other statements or opinions in the record regarding both frequency of Plaintiff's bowel movements and their potential for absenteeism and time off task, and Dr. Ganju acknowledged the other statements. AR at 487–89. These statements of Dr. Ganju were not medical opinion of a functional limitation, they were restatements of the evidence already in the record regarding Plaintiff's reports of frequent bowel movements.

Similarly, although Dr. Ganju did at one point state that Plaintiff's provider's opinion that he might miss two days of work per month "sounds reasonable" because "[t]he person who examined him says that it is reasonable" (AR at 487), Dr. Ganju did not himself adopt his own position on that issue. Thus, his statements in this regard cannot be characterized as meaningful statements regarding the impact that Plaintiff's impairments would have on his ability to perform work-related functions. *See Jessica Lynn J.*, 645 F. Supp. 3d at 135.

Finally, the ALJ asked, with respect to absenteeism, "what is the basis for saying either two days or three days as opposed to one day or four days?" AR at 490. Dr. Ganju responded, "[i]f you are asking me, Your Honor, there is no medical evidence. It is just by symptoms." *Id.* Likewise the ALJ sought clarity regarding evidence that Plaintiff would need to use the bathroom four to 14 times each day and Dr. Ganju stated that the removal of Plaintiff's bottom right colon and part of his seminal small bowel in 2012 could cause frequent bowel movements, and that "[m]aybe more medication would be needed to control the frequency [of Plaintiff's bowel movements]. But his Crohn's disease is stable . . . and probably inactive and his frequent bowel movement is because of previous surgery and his mental attitude." AR at 492.

Plaintiff's argument that this testimony attributing Plaintiff's frequent bowel movements to the 2012 surgery is substantial evidence supporting a more restrictive RFC is incorrect. The removal of Plaintiff's bowel in 2012 and his Crohn's disease reflect two distinct impairments under the Commissioner's regulations. Listing § 5.00(D)(1) identifies Crohn's disease as one manifestation of inflammatory bowel disease ("IBD"), a group of inflammatory conditions of the small intestine and colon, which are evaluated according to the criteria at Listing § 5.06. By contrast, Listing § 5.00E(1) defines short bowel syndrome as "a malabsorption disorder that occurs when . . . IBD complications require(s) surgical resection of any amount of the small intestine . . .," which is evaluated according to the criteria at Listing § 5.07.

In the present case, of the two impairments, the ALJ identified only Plaintiff's Crohn's disease (IBD) as a medically determinable impairment at step two, and was

therefore restricted under the regulations to considering limitations caused by his Crohn's. *See* 20 C.F.R. § 416.945(e) ("When you have a severe impairment(s), but your symptoms, signs, and laboratory findings do not meet or equal those of a listed impairment . . . we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity."). Dr. Ganju expressly testified that he believed Plaintiff's Crohn's disease *was not* the cause of his frequent bowel movements. In other words, while Dr. Ganju's remarks attributing Plaintiff's frequent bowel movements to the length of Plaintiff's bowels may have supported a finding of additional impairments at step two, they were *not* substantial evidence supporting RFC restrictions due to Plaintiff's Crohn's disease requiring additional bathroom breaks.

In short, the ALJ's summary of Dr. Ganju's opinion – "there is no objective evidence of any functional limitations" in the record (AR 465) – is consistent with what Dr. Ganju himself testified. While Plaintiff rightly notes that Dr. Ganju acknowledged evidence in the record of Plaintiff's frequent bowel movements, Dr. Ganju characterizes the frequent bowel movements as symptoms emanating from a 2012 surgery which can be controlled by medication. As the ALJ further noted, Dr. Ganju did not formulate a useful statement regarding the "precise extent of limitations" of what he can still do despite his impairment of Crohn's disease. AR at 465. The root of Plaintiff's disagreement with the ALJ's decision, then, is not the application of an erroneous legal standard or failure to fully consider an opinion, but rather with the ALJ's weighing of the evidence regarding Plaintiff's restrictions.

Where the ALJ has supported his RFC determination with substantial

evidence, the Court is not permitted to re-weigh the evidence. *See, e.g., Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."). Because, as discussed below, the Court does find that the ALJ's RFC determination is supported by substantial evidence, Plaintiff's first argument must be dismissed.

## II. The RFC Restriction Regarding Bathroom Breaks

In his RFC determination, the ALJ included the restrictions that Plaintiff "can only work in a location where he would have ready access to a bathroom," and that Plaintiff "must be allowed to take up to two unscheduled fifteen-minute breaks per day." AR at 463–64. Plaintiff challenges these findings as not supported by substantial evidence, arguing that the ALJ fails to explain how Plaintiff's need for frequent bathroom breaks can be accommodated by these restrictions, and that "there is no medical evidence that Plaintiff's symptoms could be managed with just two unscheduled bathroom breaks daily." ECF No. 8-1 at 17. The Commissioner's response contends that this "argument rests on the erroneous notion that the ALJ needed to rely on a medical opinion to reach his RFC finding," and that the ALJ's decision was in fact supported by substantial evidence. The Court agrees with the Commissioner.

### A. Legal Principles

After an ALJ finds at step three of the five-step sequential evaluation process that a claimant's impairments do not meet or medically equal a listing, the ALJ must proceed to make a finding regarding the claimant's RFC. 20 C.F.R. § 416.920(a)(4)(ii)–

(iv). An RFC finding is a determination of the most that the claimant can do in a work setting despite his limitations, and is based on an assessment of all of the relevant medical and other evidence in the record. 20 C.F.R. § 416.945(a)(1), (3). At the hearing stage, the ALJ bears the exclusive responsibility for assessing the claimant's RFC. 20 C.F.R. § 416.946(c). Thus, the RFC finding is an administrative, rather than a medical, determination. *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021). As such, it is within the discretion of the ALJ to resolve genuine conflicts in the evidence. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

To be sure, "[a]n ALJ is prohibited from 'playing doctor' in the sense that an ALJ may not substitute his own judgment for competent medical opinion . . . ." *Elizabeth P. v. Comm'r of Soc. Sec.*, No. 1:23-CV-00652 EAW, 2024 WL 2812434, at *7 (W.D.N.Y. June 3, 2024) (quoting *Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017)). Consequently, "[r]emand may be warranted where a court is 'unable to fathom the ALJ's rationale in relation to [the] evidence in the record.'" *Kristin H. v. Comm'r of Soc. Sec.*, No. 23-CV-6692-FPG, 2025 WL 461452, at *3 (W.D.N.Y. Feb. 11, 2025) (quoting *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982)).

Nevertheless, the regulations make clear that the ALJ – not medical sources or state consultants – is responsible for determining whether or not a claimant is disabled under the law. 20 C.F.R. § 416.920b(c)(3). Thus, "the ALJ is entitled to weigh all of the evidence available to make an RFC finding that is consistent with the record as a whole." *Blanford v. Dudek*, No. 24-2097-CV, 2025 WL 1288082, at *2 (2d Cir. May 5, 2025) (quoting *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022)). The RFC

need not "perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision, so long as it is supported by substantial evidence." *Schillo,* 31 F.4th at 78; *accord. Matta v. Astrue,* 508 F. App'x 53, 56 (2d Cir. 2013). Provided that "'the evidence of record permits [the court] to glean the rationale of an ALJ's decision,' remand is not warranted." *Kristin H.*, 2025 WL 461452, at *3 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).

**B. Application**

Here, although the ALJ's RFC finding does not perfectly align with any of the medical opinions in the record, it is nonetheless supported by substantial evidence. For one, as discussed above, board-certified gastroenterologist Dr. Ganju reviewed the entire record and found "no medical evidence," only symptoms, to support Plaintiff's claims that his Crohn's disease would require so many bathroom breaks during the day as to be work preclusive. AR at 490.

Additionally, the ALJ thoroughly considered the treatment notes from Plaintiff's treatment providers. He pointed to evidence that from 2014 through 2016, Plaintiff "attended sporadic routine follow-up care" with his treating gastroenterologist, Dr. Alok Gupta, and that Plaintiff's condition was controlled with medication, limiting Plaintiff to 3 to 4 bowel movements a day. AR at 464–65 (citing AR at 211–22, 395). The ALJ also discussed evidence from Plaintiff's two visits to Dr. Wacker, once in 2016 and once in 2017, at which he reported 5 to 8 bowel movements a day, but no "nocturnal stooling and incontinence." AR at 465 (citing AR at 397, 401, 403). The ALJ also discussed Plaintiff's treatment with Dr. Corasanti. Specifically, the ALJ noted that Plaintiff reported doing well in mid-2018 and desired to wean off

his prescribed medications (citing AR at 942–43), and in January 2019 reported that his bowel movements were well-controlled (citing AR at 948). Lastly, the ALJ noted that Plaintiff "has been able to take care of all of his activities of daily living." AR at 465; *see also* AR at 463 (citing, inter alia, Plaintiff's report to his consultative examiner at AR 338 that he "could go shopping once a week and do child care every day . . . . takes a shower, bathes, and dresses occasionally . . . .").

Having considered all relevant evidence, the ALJ likewise found – as did Dr. Ganju – that there was no medical evidence in the record supporting Plaintiff's reported symptoms. Nevertheless, the ALJ exercised his discretion to give Plaintiff the benefit of the doubt and adopted restrictions requiring that Plaintiff be near a restroom and be allowed two unscheduled fifteen minute breaks each day. *See, e.g., Melissa D. v. Comm'r of Soc. Sec'y*, 21-CV-652, 2023 WL 2364814, at *4 (W.D.N.Y. Mar. 6, 2023) ("ALJ permissibly partially credited Plaintiff's subjective complaints and accordingly included in the RFC finding a limitation . . . that was not identified by the medical opinions of record."); *see also Jessica Lynn J.*, 645 F. Supp. 3d at 135–36 ("[A]n ALJ does not commit reversible error where he gives a claimant the benefit of the doubt and assesses limitations more severe than those supported by the medical evidence of record based on the claimant's subjective complaints.") (internal citation omitted).

Although there are records that may seem to indicate Plaintiff may require *more* than two unscheduled restroom breaks per day, the ALJ's RFC finding in this regard is supported by substantial evidence. Therefore, Plaintiff's second argument must be dismissed. *See Schillo*, 31 F.4th at 74 (quoting *McIntyre v. Colvin*, 758 F.3d

146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.").

## CONCLUSION

For the foregoing reasons, Plaintiff Mohammed A.'s motion for judgment on the pleadings [ECF No. 8] is denied, and the Commissioner's motion for judgment on the pleadings [ECF No. 14] is granted. The Clerk of Court is directed to enter judgment on behalf of the Commissioner and close this case.

SO ORDERED.

DATED: October 19, 2026
Rochester, New York

HON. MEREDITH A. VACCA
United States District Judge